**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES V. OLIVER,** | : | **CIVIL NO. 4:CV-10-1387** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **JEFFREY A. BEARD, et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Plaintiff Charles V. Oliver ("Oliver"), an inmate presently confined at the State Correctional Institution at Retreat ("SCI Retreat") in Hunlock Creek, Pennsylvania, initiated the above action pro se by filing a complaint under the provisions of 42 U.S.C. § 1983. (Doc. 1.) He asserts claims arising from events that occurred while he was confined at the State Correctional Institution at Dallas ("SCI Dallas") in Dallas, Pennsylvania.

Presently before the Court is a motion for summary judgment filed on behalf of the defendants remaining in this action, the Reverend W. James Pall, a Facility Chaplain Program Director at SCI Dallas; Joseph Zakarauskas, an Intelligence/Security Lieutenant at SCI Dallas; Chris Putnam, the Unit Manager of C and D Blocks at SCI Dallas; and William P. Miller, an Intelligence/Security Lieutenant at SCI Dallas ("defendants"). (Doc. 24.) Also pending is Oliver's motion seeking reconsideration of our June 14, 2011 order (Doc. 47) granting defendants' motion to extend the case management deadlines in this case pending our ruling on the instant motion for summary judgment. (Doc. 53.)

For the reasons set forth below, defendants' motion for summary judgment will be

granted based upon Oliver's failure to exhaust his administrative remedies as to his claims against defendants. Because this case will be closed, plaintiff's motion for reconsideration of the decision to extend the case management deadlines in this case will be denied as moot.

## I. Background

In his original complaint, filed on July 6, 2010, Oliver sets forth four claims. He first alleges that, while he was confined at SCI Dallas, defendants were deliberately indifferent to his safety in violation of the Eighth Amendment by knowingly placing his childhood abuser in his cell. (Doc. 1 at 7.) He next alleges that "Defendants knowingly sent my laundry bag to F-Block for purpose of negotiations with prison gangs for a contract of discrimination," thereby creating unsafe conditions. (Id. at 7 ¶ 13(B).) Oliver's third claim is that, after a criminal complaint was filed, defendants Pall and Zakarauskas retaliated against him by administratively transferring him with the knowledge that it would result in the loss of his job. (Id. ¶ 13(C).) Finally, in his fourth claim, Oliver alleges that defendants Zakarauskas and Pall verbally insulted him and his mother, who he identifies as Queen Noor of Jordan. (Id. ¶ 13(D), (E).) .

This case originally was assigned to the Honorable James F. McClure, Junior.[1] After screening the complaint pursuant to 28 U.S.C. § 1915, by memorandum and order dated August 19, 2010, Oliver's Eighth Amendment failure to protect claim regarding the alleged placement of his childhood abuser in his cell at SCI Dallas was permitted to go forward;

---

[1] On December 22, 2010, following Judge McClure's death, this case was reassigned to the undersigned.

Oliver was directed to amend his Eighth Amendment claim regarding his laundry bag to include factual allegations to support the claim; and his retaliation claim concerning his transfer from SCI Dallas, and his claim regarding verbal insults, were dismissed with prejudice for failure to state a claim upon which relief may be granted. (Doc. 10.) In addition, defendants Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"), and James J. McGrady, Superintendent of SCI Retreat, were dismissed as parties for lack of personal involvement; Oliver's claim for compensatory damages arising out of his failure to protect claim was dismissed with prejudice because Oliver did not allege that he suffered any physical injury as a result of residing in the same cell as his alleged abuser; and Oliver's request for a preliminary and permanent injunction enjoining defendants Pall, Zakarauskas, Miller, and Putnam from trying to again have his childhood abuser placed in his cell was denied as moot inasmuch as Oliver and his alleged childhood abuser no longer were confined in the same institution. (Id.)

On September 2, 2010, Oliver filed an amended complaint as to his laundry bag claim. (Doc. 12.) He also filed a motion to amend (Doc. 11) and supporting brief (Doc. 14) as to his retaliation and verbal insult claims that had been dismissed with prejudice. By memorandum and order dated October 7, 2010, the Court denied Oliver's request to amend as to his verbal insults claim, but granted his request to amend as to his claim that defendants Pall and Zakarauskas retaliated against him by transferring him to a different prison. (Doc. 15.) Accordingly, service of the complaint (Doc. 1) and amended complaint (Doc. 12) was directed on defendants Pall, Zakarauskas, Miller, and Putnam as to the following three (3)

3

claims that are the remaining claims in this action: (1) Oliver's claim that defendants failed to protect him when they knowingly placed him in a cell with his alleged childhood abuser; (2) his claim that defendants Pall and Zakarauskas retaliated against him by transferring him to a different prison with the knowledge that it would result in a downgrade in his prison job pay; and (3) his claim that defendant Pall retaliated against him by sending his laundry bag to F-Block. (Id.)

Waivers of service of summons were returned on behalf of defendants reflecting that the waivers were sent on October 22, 2010, and thus an answer was due on or before December 21, 2010. (Docs. 17, 19.) On December 20, 2010, Defendants filed an answer to the complaint. (Doc. 21.) The instant motion for summary judgment was filed on behalf of defendants on December 23, 2010. (Doc. 24.) A supporting brief (Doc. 25) and supporting exhibits (Doc. 26) simultaneously were filed. Oliver filed his opposition brief on January 3, 2011.[2] (Doc. 30.) Oliver subsequently filed a motion (Doc. 31) requesting leave to file exhibits that he inadvertently failed to attach to his opposition brief, which we granted by memorandum and order dated May 6, 2011. (Doc. 34.) Also in our May 6 memorandum and order, we directed defendants to file their statement of material facts that had not been filed with their motion for summary judgment, but that had been referenced throughout their brief in support of their motion, and directed Oliver to file his responsive statement within twenty-

---

[2]Before filing his opposition brief, on December 30, 2010, Oliver filed a declaration (Doc. 29), which we construe as part of his opposition to the instant motion for summary judgment inasmuch as Oliver refers to it throughout his responsive statement of material facts (see Doc. 36).

4

one (21) days of that filing. (Id.) On May 9, 2011, Defendants filed their statement of material facts. (Doc. 35.) Oliver filed his responsive statement on May 18, 2011. (Doc. 36.) Accordingly, the motion for summary judgment is fully briefed and ripe for review.

In addition, on June 13, 2011, defendants filed a motion requesting an extension of the discovery and dispositive motion deadlines pending our disposition of their motion for summary judgment. (Doc. 46.) In their motion, defendants observed that their motion for summary judgment only raises the issue of exhaustion of administrative remedies and does not address the merits of Oliver's claims. (Id. ¶ 3.) They also noted that no case management order had been issued in this case. (Id. ¶ 4.) Thus, defendants pointed out that, pursuant to Local Rule 26.4, the discovery deadline was set to expire on June 20, 2011, and pursuant to Federal Rule of Civil Procedure 56(b), the dispositive motion deadline was set to expire on July 20, 2011. (Id. ¶¶ 5-6.) Consequently, defendants noted that, if the Court were to deny their pending motion for summary judgment after the expiration of these deadlines, they would be time barred from engaging in discovery and from filing additional dispositive motions as to the merits of Oliver's claims. (Id. ¶¶ 8-9.) They therefore requested an extension of the case management deadlines pending our disposition of the motion for summary judgment. (Id. at 2-3.) By order dated June 14, 2011, we granted defendants' motion and suspended the deadlines for the completion of discovery and submission of dispositive motions pending further order of court. (Doc. 47.)

On June 22, 2011, Oliver filed a motion for reconsideration (Doc. 53) from our June 14 order along with a supporting brief (Doc. 54). Defendants filed an opposition brief on

5

July 5, 2011. (Doc. 55.) On July 12, 2011, Oliver filed a reply brief. (Doc. 57.) Accordingly, Oliver's motion for reconsideration also is fully briefed and ripe for review.

## II.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. Id. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving

party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. Anderson, 477 U.S. at 256-57.  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000).  Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."  Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

### III.    **Statement of Material Facts**

Oliver was confined at SCI Dallas until he was transferred to SCI Retreat on or about November 12, 2009.  (Doc. 35, Defs.' Statement of Material Facts ("SMF"), ¶ 2; Doc. 36, Pl.'s SMF, ¶ 2.)  The remaining defendants are the Reverend W. James Pall; Joseph Zakarauskas; Chris Putnam; and William P. Miller.  (Doc. 35 ¶ 3; Doc. 36 ¶ 3.)  Oliver's

remaining claims include: (1) an Eighth Amendment "failure to protect" claim against the remaining defendants for allegedly knowingly housing Oliver with his "childhood abuser"; (2) a retaliation claim against Defendant Pall for having Oliver's laundry bag sent to the wrong housing unit; and (3) a retaliation claim stemming from Oliver's transfer to a different prison and resulting downgrade in his prison job pay against Pall and Zakarauskas.  (Doc. 35 ¶ 4; Doc. 36 ¶ 4.)

The DOC's administrative directive, entitled "Inmate Grievance System," DC-ADM 804 ("804"), provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which to resolve issues relating to their incarceration.  (Doc. 35 ¶ 5; Doc. 36 ¶ 5; Doc. 26, Ex. A, McMillan Decl., at 3-4 ¶¶ 4-5.)  Inmates are provided with notice of the requirements they must meet to properly grieve their issues through the DOC's Inmate Handbook, which contains the provisions of 804. (Doc. 26, McMillan Decl., at 6 ¶ 9.)  The Inmate Handbook is distributed to inmates at reception and re-distributed to them as new versions are released and also is available at the prison library for inspection and copying.  (Id.)  In addition, copies of 804 are available for review on each housing unit, including the Restricted Housing Unit ("RHU").  (Doc. 35, Defs.' SMF, ¶ 8.)

The version of 804 that was in effect at the relevant time took effect on January 3, 2005.[3]  (Doc. 26, McMillan Decl., at 4 ¶ 7.)  If informal resolution fails, 804 provides a three-

---

[3]Although defendants have not submitted a copy of the relevant version of 804 with their materials in support of the instant motion, it is a matter of public record, and therefore,

step process for resolution of inmate grievances: 1) the initial grievance; 2) the appeal to the Superintendent; and 3) the appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 26, McMillan Decl., at 4 ¶ 6; DC-ADM 804 VI. A.-D.)

An inmate must file his or her initial grievance with the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. (Doc. 26, McMillan Decl., at 4-5 ¶¶ 7, 8. a.; DC-ADM 804 VI. A. 8.)  804 requires that, in his/her initial grievance, "[t]he inmate will include a statement of the facts relevant to the claim. . . . The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance." (Doc. 35 ¶ 9; DC-ADM 804 VI. A. 7.)

The Initial Review decision from the Grievance Coordinator must be received by an inmate before he or she may seek an appeal to the Facility Manager. (Doc. 26, McMillan Decl., at 5 ¶ 8. b.; DC-ADM 804 VI. C. 1. a.) If an inmate is dissatisfied with the disposition of his or her grievance by the Grievance Coordinator, he or she must appeal the Initial Review decision to the Facility Manager within ten (10) days from the receipt date of the Initial Review decision. (Doc. 26 at 5 ¶ 8. b.; DC-ADM 804 VI. C. 1. b.) Only issues that were raised for Initial Review may be appealed to the Facility Manager. (Doc. 26 at 5 ¶ 8. b.; DC-ADM 804 VI. C. 1. c.)

The decision from the appeal to the Facility Manager must be received by an inmate before he or she may seek an appeal to the SOIGA. (Doc. 26 at 6 ¶ 8 c. I.; DC-ADM 804 VI.

---

we shall refer to its provisions, and all citations to 804 herein refer to the version that became effective on January 3, 2005.

D. 1. a.)  If an inmate is dissatisfied with the disposition of an appeal from the Facility Manager, he or she must submit an appeal to the SOIGA within fifteen (15) working days from the date of the Facility Manager's decision.  († Doc. 26 at 6 8. c. I.; DC-ADM 804 VI. D. 1. b.)  Only issues appealed to the Facility Manager may be appealed to the final level of review to the SOIGA.  (Doc. 26 at 6 8. c. iv.; DC-ADM 804 VI. D. 1. b.)

Upon request, Christine McMillan, Litigation Coordinator at SCI Retreat, reviewed Oliver's file to determine whether any grievances, including rejected grievances, were filed relating to Oliver's allegations in this lawsuit regarding cell placement with his alleged childhood abuser, his laundry bag being sent to the wrong block, and his alleged retaliatory transfer to SCI Retreat, and any claims relating thereto.  (Doc. 26, McMillan Decl., at 7 ¶ 10.) Upon review, McMillan determined that the only relevant grievance in Oliver's file is one containing an allegation that, on or about October 29, 2008, his laundry bag allegedly was intentionally sent to the wrong block.  (Id. ¶ 11.)  This grievance, which was assigned Grievance No. 248494, was filed by Oliver on or about October 29, 2008.  (Id. ¶ 13; Doc. 26 at 10, Ex. A-1, Grievance No. 248494.)  The grievance does not identify defendant Pall, or any of the other remaining defendants, as being involved in the allegations in the grievance. (Doc. 26 at 7 ¶ 13; Doc. 26 at 10.)  Instead, in the grievance, Oliver alleges that, on October 29, 2008, the "tradesmen who run laundry department purposely allowed my laundry bag which was clearly marked . . . to be sent to F Blk."  (Doc. 26 at 10.)  On November 11, 2008, the Grievance Officer issued a response to Grievance No. 248494 containing the following summary of her findings:

10

> On 10/29/08 your laundry bag was sent to F-Block by mistake, which happens occasionally. It was not sent to F-Block intentionally by laundry Foreman Mr. Mulligan nor was it sent to F-Block for another staff member. There was no harm to you or your property and there was no damage to your laundry when you got your laundry. Based on the information above I considered this grievance resolved.

(Doc. 26 at 11, Ex. A-2, 11/11/08 Resp.)

Oliver appealed the Initial Review Response to the second level of review, the Superintendent, who affirmed the initial findings. (Doc. 26 at 8 ¶ 15; Doc. 26 at 12-13, Exs. A-3, A-4.) In particular, the Superintendent's response stated, "Ms. Bilko noted in her response that your laundry bag was not sent to F Block intentionally by Mr. Mulligan as you claim in your grievance. There was no harm to you or your property and there was no damage to your laundry when you received it." (Doc. 26 at 13, Ex. A-4.)

Oliver appealed the Superintendent's decision to the SOIGA, and the decision was affirmed once again. (Doc. 26 at 8 ¶ 16; Doc. 26 at 14-15, Exs. A-5, A-6.) In particular, the SOIGA's response stated as follows:

> You have failed to provide any evidence that your laundry bag was intentionally sent to another block by staff on October 29, 2008. A review of the record reveals that your laundry bag was mistakenly sent to F Block on the date in question. Mistakes do occur occasionally. Neither you nor your property was harmed or damaged. As there is no evidence to support your claims that staff intentionally sent your laundry to another block, your claims of such are unsubstantiated.

(Doc. 26 at 15, Ex. A-6.)

According to McMillan, other than Grievance No. 248494, Oliver's file does not contain any other grievances relating to any of his claims in this lawsuit. (Doc. 26 ¶ 17.)

11

Also, since his transfer to SCI Retreat on November 12, 2009, Oliver has not filed any grievances regarding his allegations that staff at SCI Dallas retaliated against him, his transfer to SCI Retreat, or his related claims regarding his prison job's pay.[4] (Id. ¶ 18.)

At the time of the events pertaining to this matter, defendant Reverend Pall was the Facility Program Director at SCI Dallas. (Doc. 26 at 18, Ex. B, Pall Decl., ¶ 1.) Pall's overall responsibilities and duties include managing the overall operation of the religious programs at SCI Dallas and supervising the other Chaplains, who are both contract and DOC employees. (Id. ¶ 2.) In his capacity as Facility Chaplaincy Program Director, Pall did not at the relevant time, nor has he ever, had any responsibility or authority over inmate housing decisions or the movement of inmate laundry. (Id. at 19 ¶ 6.) Pall was never informed of any correspondence or documents that Deputy Mooney allegedly received from Oliver. (Id. ¶ 7.) Pall never had any conversations with Deputy Mooney or anyone else regarding Oliver or his complaints regarding his cellmate or his laundry. (Id.) Pall also does not recall Oliver ever speaking about his concerns over his cellmate. (Id. ¶ 5.)

## IV. Discussion

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be

---

[4]Oliver contends that he was "discouraged" from filing grievances and that he went to legal authorities for help (see Doc. 36 ¶ 18), but offers no evidence either of this alleged discouragement or that contacting legal authorities is a method of exhaustion of administrative remedies authorized by 804.

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "'[I]t is beyond the power of this court- or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'" Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.[5] Woodford v. Ngo, 548 U.S. 81, 92 (2006).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus

---

[5]Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not required to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Rather, failure to exhaust must be pleaded and proven by the defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  Id. at 93 (quoting Porter, 534 U.S. at 525)).  Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default."); see also Jones v. Bock, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim."  Gallego v. United States, Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

Defendants have demonstrated that Oliver failed to exhaust his administrative remedies with respect to any of his claims against them.  Specifically, as detailed in the foregoing section, the only grievance filed by Oliver relating to a claim in this lawsuit was Grievance No. 248494 where he complained about his laundry bag being sent to F-Block.  (See Doc. 26, McMillan Decl., at 7 ¶ 11.)  However, Oliver's claim in the instant action is that defendant Pall retaliated against him by sending his laundry bag to F-Block.  (See Doc. 12, Am. Compl.)  In Grievance No. 248494, Oliver does not identify Pall, or any of the other remaining defendants, as being involved in the allegations he makes in that grievance.  (See Doc. 26 at 10, Ex. A-1.)  The version of 804 that was in effect at the time that Oliver filed his

grievance required him to "identify any person(s) who may have information that could be helpful in resolving the grievance." DC-ADM 804 VI. A. 7.  In <u>Spruill</u>, the United States Court of Appeals for the Third Circuit held that 804 made it mandatory for an inmate to include in his grievance the facts relevant to his claim; that the identity of a defendant is a fact relevant to an inmate's claim; and that it was therefore mandatory for an inmate to include the identity of the defendant in his grievance. <u>Spruill</u>, 372 F.3d at 234.  Despite the failure by the inmate in <u>Spruill</u> to include the name of a particular defendant in his grievance, it was determined that he nevertheless exhausted his administrative remedies because, in responding to the grievance, the prison grievance officer recognized that the particular defendant was involved in the events that the inmate had complained of, thereby excusing any procedural defects in the inmate's initial grievances. <u>Id.</u>

In contrast, in the instant case, Oliver did not name defendant Pall in his initial grievance and Pall was not identified as an individual involved in the allegations by the members of the DOC staff who responded to Oliver's initial grievance and subsequent appeals.  Instead, in his grievance, Oliver identifies the "tradesmen who run laundry department" as being responsible for sending his laundry bag to the F Block, and in the response to the grievance, and in the response to his appeal to the Superintendent, laundry foreman Mr. Mulligan was identified as the staff member who would be involved in Oliver's allegations.  (<u>See</u> Doc. 26 at 10, Ex. A-1; at 11, Ex. A-2; at 13, Ex. A-4; at 17, Ex. A-6.) Moreover, Oliver has not provided any explanation as to why he failed to identify Pall as being involved in the allegations in his grievance.  Therefore, even though Oliver exhausted a

15

grievance relating to his laundry bag, his failure to identify Pall in that grievance has resulted in his failure to exhaust the claim against Pall so as to allow him to pursue the claim in this lawsuit.[6]

With respect to his failure to exhaust generally as to the three claims remaining in this lawsuit, in opposing the instant motion, Oliver has claimed that the DOC employees who responded to his initial grievance and subsequent appeals, "excepted [sic] my version never saying a plaintiff expanded version or new facts weren't allowed as they became known or mentioned them at all, they excepted [sic] all my information and facts."  (See Doc. 30, Pl.'s Opp'n. Br., at 2.)  It is not the role of DOC staff to advise Oliver as to how to compose his grievances and appeals or to tell him which staff members he should complain about, particularly where he has notice of the requirements of 804 through the Inmate Handbook,

---

[6]Notwithstanding this failure to sufficiently identify Pall in his grievance, we find that, even if Oliver had sufficiently identified defendant Pall in his grievance so as to exhaust his claim against him regarding his laundry bag, he has failed to submit any evidence to support his allegations against Pall and to contradict defendants' evidence submitted in support of their motion for summary judgment.  Specifically, Oliver has not submitted any evidence to controvert Pall's declaration that he was unaware of any correspondence Deputy Mooney received from Oliver and that he never spoke to Mooney, or anyone else, including Oliver, about Oliver's complaints regarding his cellmate or his laundry, and that Pall had no authority or control over inmate housing decisions or the movement of inmate laundry.  (See Doc. 26 at 18-19, Pall Decl.)  As the United States Supreme Court noted recently in Scott v. Harris, 550 U.S. 372, 380 (2007), "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Accordingly, based upon the record before us, even if Oliver had exhausted his claim against Pall, he has provided no evidence to support a retaliation claim against him upon which relief may be granted.

which was provided to Oliver upon his arrival in the DOC system and is available both at the prison library and on each housing unit. (See Doc. 26, McMillan Decl., at 6 ¶ 9; Doc. 35, Defs.' SMF, ¶ 8.)

In addition, in opposing the instant motion, Oliver suggests either that this Court may excuse the PLRA's exhaustion requirement (see Doc. 36, Pl.'s SMF, ¶ 19) or that he has exhausted his administrative remedies by writing letters to DOC staff members, including Superintendent Mooney, Captain Zakarauskas, and Superintendent Klopotoski, and to Luzerne County District Attorney Jackie Musto Carroll (see id. ¶¶ 5-6, 11). Specifically, in opposing defendants' evidence that he failed to exhaust his administrative remedies, Oliver cites repeatedly to the copies of the letters that he wrote to Mooney, Zakarauskas, Klopotoski, and Carroll that are attached to his complaint (see Doc. 1, Exs. A, B, C, D, E, F) and to responses he received from the Luzerne County District Attorney's Office (see Doc. 36, Exs. 1-4) as proof that he exhausted his administrative remedies. (See Doc. 36, Pl.'s SMF; Doc. 30, Pl.'s Opp'n Br.)

As already stated, this Court lacks the authority to excuse the PLRA's exhaustion requirement. See Nyhuis, supra, 204 F.3d at 73. Moreover, Oliver has provided no evidence to support his contention that sending letters to staff members and outside law enforcement officials is part of the established procedure set forth in 804 that Oliver is required to follow in order to exhaust his administrative remedies before filing a federal lawsuit. Despite the fact that he did not sufficiently identify defendant Pall in his grievance regarding his laundry bag being sent to the wrong block so as exhaust his claim against Pall for purposes of this

17

action, Oliver nevertheless demonstrated through his filing of Grievance Number 248494 that he was aware of and capable of following the established procedures set forth in 804 to file and exhaust a grievance and subsequent appeals to the Facility Manager and the SOIGA. Yet, he did not follow these procedures with respect to his remaining claims in this lawsuit. Based on the foregoing, the record establishes that Oliver has not exhausted his administrative remedies as to any of his remaining claims in this action, and therefore, remaining defendants are entitled to judgment as a matter of law.

**V.     Conclusion**

Based upon the foregoing, the motion for summary judgment filed on behalf of defendants Pall, Zakarauskas, Putnam, and Miller (Doc. 24) will be granted, and judgment will be entered in favor of defendants. In addition, because this case will be closed, Oliver's motion for reconsideration (Doc. 53) of our order suspending the case management deadlines will be denied as moot. An appropriate order will issue.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: September 29, 2011

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES V. OLIVER,** | : | **CIVIL NO. 4:CV-10-1387** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **JEFFREY A. BEARD, et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

AND NOW, to wit, this 29th day of September 2011, in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 24) filed on behalf of defendants Pall, Zakarauskas, Putnam, and Miller is GRANTED.

2. The Clerk of Court shall ENTER judgment in favor of defendants Pall, Zakaraukas, Putnam, and Miller, and against plaintiff.

3. Plaintiff's motion for reconsideration (Doc. 53) is DENIED as moot.

4. The Clerk of Court is directed to CLOSE this case.

          **BY THE COURT:**

          **s/James M. Munley**
          **JUDGE JAMES M. MUNLEY**
          **United States District Court**